UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUAN G. SANCHEZ,<br><br>   Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security Administration,<br><br>   Defendant. | Case No. C05-1493-JCC-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Juan G. Sanchez appeals a final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, I recommend that the decision of the Commissioner be affirmed and this case be dismissed.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a sixty-year-old man, originally from Cuba, who has a fifth-grade formal education. AR 71, 109. While living in Cuba, plaintiff had fifteen years of work experience, but in 1972, he began living on the streets, was incarcerated, and treated in a mental clinic.[1] AR 489. In 1980, plaintiff immigrated to the United States during the Mariel Boat Lift. AR 149, 489. After arriving in the United States, plaintiff worked as a janitor and dishwasher for

---

[1] Plaintiff's work experience in Cuba includes working in sugar cane fields, serving in the Cuban Army, and working as an assistant cartographer for the government. AR 104.

approximately seventeen years. AR 104, 491-92.

In 1999, the plaintiff was charged with fourteen counts of unlawful use of food stamps, one count of money laundering, and one count of conspiracy to commit a violation of the Uniform Controlled Substance Act. AR 147. He was incarcerated for twenty months and released in May 2001. AR 485-86. There is no record of employment following his release.

On August 14, 2001, plaintiff filed applications for SSI and DIB. AR 71-74, 449-52. Plaintiff alleged that he became disabled on January 1, 1999, as a result of atypical psychosis, anxiety disorder not otherwise specified ("NOS"), arthritis, tuberculosis, back pain, shortness of breath, and hemorrhoids. AR 71, 449. Plaintiff's applications were denied both initially and on reconsideration. AR 36-43, 456-62.

Plaintiff requested a hearing which took place on December 13, 2004. AR 476-93. On January 26, 2005, the ALJ issued a decision finding that plaintiff retained the residual functional capacity to perform his past relevant work. AR 28-29. Plaintiff appealed, but the Appeals Council denied his request for review. AR 7-9. Accordingly, the ALJ's January 26, 2005, decision serves as the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 422.210.

## II. JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (2005).

## III. STANDARD OF REVIEW

The Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is defined as more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*,

881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citations omitted).

## IV.  EVALUATING DISABILITY

As the claimant, Mr. Sanchez bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant is disabled only if his impairments are of such severity that he is not able to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Social Security regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must establish that he is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant establishes that he has not engaged in any substantial gainful activity, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe

impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant who meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether the claimant can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is not able to perform his past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled, and benefits may be awarded.

## V. DECISION BELOW

On January 26, 2005, the ALJ issued a decision finding:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2004.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's hypertension, psychotic disorder, NOS, and anxiety disorder, NOS are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. I find that the claimant's allegation regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: The claimant has the ability to lift and carry 50 lbs. occasionally and to lift and carry 25 lbs. frequently. The claimant has the ability to walk and stand, with normal breaks, for a total of 6 hours in an 8-hour workday. The claimant has the ability to sit, with normal breaks, for a total of 6 hours in an 8-hour workday. The claimant has the ability to sit, with normal breaks, for a total of 6 hours in an 8-hour workday. The claimant retains the mental ability to understand, remember and carry out simple instructions and make simple work-related decisions necessary to function in unskilled work. The claimant has the ability to respond appropriately to supervisors, co-workers and usual work situations and the ability to deal with changes in a routine work setting.

7. The claimant's past relevant work as a dishwasher and janitor did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8. The claimant's medically determinable hypertension, psychotic disorder, NOS, and anxiety disorder, NOS do not prevent the claimant from performing his past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 1520(f) and 416.920(f)).

AR 28-29.

## VI. ISSUES ON APPEAL

Plaintiff raises several issues in support of his argument that this case should be reversed and remanded for further administrative proceedings. They are best summarized as:

1. Did the ALJ err at step two by failing to find plaintiff's cardiac condition to be a severe impairment?;

2. Did the ALJ err in his RFC determination?; and

3. Did the ALJ err by finding that plaintiff's past relevant work was not precluded by his RFC?

## VII. DISCUSSION

A. <u>The ALJ's Finding That Plaintiff's Cardiac Impairment Was Not Severe Is Supported by Substantial Evidence.</u>

Step two of the sequential evaluation process requires claimants to prove that they have a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it significantly limits the plaintiff's ability

to perform basic work activities.[2]  20 C.F.R. §§ 404.1521(a), 416.921(a); *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).  When an impairment or combination of impairments consists of no more than a slight abnormality that has "no more than a minimal effect on an individual's ability to work," a finding of non-severe is appropriate.  *Smolen*, 80 F.3d at 1290 (internal citations omitted); *see also* SSR 96-3p.  Hence, step two acts as a "*de minimis* screening device to dispose of groundless claims." *Smolen,* 80 F.3d at 1290.

       The ALJ conducted a thorough examination of plaintiff's cardiac records and found that despite his reports of chest pain and shortness of breath, "no testing showed any pulmonary or cardiac abnormalities that would cause these symptoms." AR 24.  To support this conclusion, the ALJ observed that doctors found no heart-related impairments when he went to a hospital in June 2001.  Instead, the doctors recommended plaintiff decrease his caffeine intake.  AR 20.  The ALJ also noted that a year later a stress test showed "no significant abnormalities," and that plaintiff was found to be a low risk for heart problems.  AR 23.  Similarly, the ALJ pointed out that in January and August of 2003, plaintiff indicated that he was jogging 15 to 20 minutes per day and feeling good.  AR 24.  The ALJ also acknowledged an April 2004 cardiac stress test which showed a decreased "ejection fraction," but pointed out that the reviewing physician noted that the decrease "might have been due to ectopy and therefore . . . falsely low."  AR 24.

       Some of the same evidence cited by the ALJ diagnosed plaintiff with a heart murmur and "probable . . . mild aortic sclerosis." AR 317.  Although not discussed by the ALJ, doctors confirmed these diagnoses in May 2004, and subsequently referred plaintiff to a

---

[2]Basic work activities include the abilities and aptitudes necessary to do most jobs including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, understanding, carrying out and remembering simple instructions, and dealing with changes in a routine work setting.  *See* 20 C.F.R. §§ 404.1521(b), 416.921(b); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

01 cardiologist.[3]  AR 330-31.

02     There is substantial evidence which supports the ALJ's failure to find that plaintiff had any limitations stemming from his severe cardiac impairments.  Although plaintiff reported some chest pain and dizziness during a stress test, the ALJ pointed out that his doctor believed the decreased readings from the test may have been falsely low.  AR 24, 255.  There are serious questions regarding the credibility of plaintiff's testimony, which the ALJ summarized in his decision.  AR 26-27.  Moreover, March 2004 medical records, prior to his stress test, show that his chest pain was not brought on by exertion, and that he felt fine when walking, including walking up hills and stairs.  AR 335.  This is consistent with earlier reports, cited by the ALJ, that plaintiff was running 15 to 20 minutes per day and generally feeling good.  AR 315.  Plaintiff has not shown that his alleged cardiac impairment causes any significant limitation in his ability to perform basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  Although there are alternative interpretations of the evidence, the ALJ's interpretation is supported by substantial evidence and should be upheld.  *Thomas*, 278 F.3d at 954.

    Plaintiff claims that the ALJ had a duty to develop the record and that he should have solicited records from his cardiologist.  Reply Br. at 5.  Although the ALJ must seek additional evidence or clarification from a treating physician when his opinion is vague or conflicting, that duty "is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability."  20 C.F.R. § 416.912(e); s*ee also* SSR 96-5p; *Thomas*, 278 F.3d at 958.  As discussed above, this duty was not triggered in this case, because the treating medical source evidence was not inadequate.

    Plaintiff also asserts that the ALJ acted as his own medical expert when evaluating plaintiff's cardiac records.  Op. Br. at 10.  This argument lacks merit.  It is the ALJ's duty to

---

[3]It is not clear that plaintiff ever saw a cardiologist on this referral.  The record does not appear to contain any records from a cardiologist.

fairly and fully evaluate the conflicting medical evidence of record, and here, he properly executed that duty. *Andrews*, 53 F.3d at 1039.

  B. <u>The ALJ Did Not Err In His RFC Determination.</u>

  The ALJ determined that plaintiff had a moderate limitation in his ability to maintain concentration, persistence, or pace. AR 25. Plaintiff argues that the ALJ erred by failing to include this limitation in his RFC and that it should have been presented in a hypothetical to the Vocational Expert ("VE"). Op Br. at 13. In his reply, plaintiff argued for the first time that the ALJ's RFC analysis was deficient because he failed to find that he suffered from borderline intellectual functioning or mild mental retardation. Reply Br. at 10. Because this was raised for the first time in the reply brief, the Court requested, and the Commissioner filed, a supplemental response to this argument. Dkt. No. 21.

  As to the first issue, when evaluating mental impairments, the ALJ must follow a "special technique" requiring him to evaluate the severity of mental impairments under certain categories, including concentration, persistence, or pace. 20 C.F.R. §§ 1520a, 416.920a; SSR-96-8p. This is distinct from a functional RFC determination. SSR 96-8p. The ALJ utilized this special technique to evaluate plaintiff's limitations in concentration, persistence, and pace. AR 25. He found the limitations to be "moderate," and translated this rating into the specific abilities retained in plaintiff's RFC, *e.g.*, the "mental ability to understand, remember and carry out *simple* instructions and make *simple* work-related decisions necessary to function in unskilled work." AR 25-27 (emphasis added). The ALJ utilized the proper methodology and did not err in his mental impairment evaluation.

  The plaintiff's claims that the ALJ failed to evaluate diagnoses of borderline intellectual functioning or mild retardation also lack merit. It appears that the plaintiff was seen at Western States Hospital ("WSH") twice in 1989, including a ninety-day stay. AR 148. Records relating to that stay are not in the record. There is a notation in his records that he suffered depression with psychosis. AR 270. However, Gerald Peterson, Ph.D., reviewed the

01 records and noted "[o]n extended stay at WSH intelligence was noted only as below average
02 range. No other evidence supports a diagnosis of borderline intellectual functioning and his
03 sustained activity with food stamp fraud suggest and adequate ability to function
04 intellectually." AR 290. It also appears that the plaintiff had a psychiatric evaluation at WHS
05 in February 2000 to determine if he was competent to stand trial. AR 151-54. He apparently
06 was found competent. After his release from jail, the plaintiff was sent for intelligence testing,
07 which showed that he had severely impaired vocabulary and mild impairment in visual-spatial
08 problem solving, but was able to solve problems if shown first. AR 271-72. In addition, Dr.
09 Peterson noted that the plaintiff was able to manage effectively large sums of money while
10 fraudulently dealing with food stamps. This management of large bank accounts, and the
11 scheme in general, indicated an ability to manage relatively complex tasks. AR 290.

12       One issue impacting the ALJ's determination was the plaintiff's adverse credibility
13 assessment. The ALJ cited medical reports that indicated that the plaintiff was skilled "at
14 getting dumb" when it benefitted him to do so, that there was no evidence of mental
15 deterioration after serving his time in jail, and that the plaintiff had been able to work after
16 previous hospitalizations. AR 291. The ALJ considered plaintiff's statements regarding the
17 extent of his impairments and found them "not credible." AR 28. The finding is also
18 significant because the ALJ expressed concerns that certain medical opinions relating to
19 plaintiff's mental-health conditions could have been unduly influenced by over-reliance on
20 plaintiff's self-reporting. AR 26. As noted above, the ALJ is responsible for determining
21 credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews*, 53
22 F.3d at 1039. This adverse credibility finding is not challenged on appeal.

23       The ALJ considered all of the medical evidence, and accommodated the plaintiff's
24 limitations by finding that he was limited to performing work that required only the ability to
25 understand, remember and carry out simple instructions, and make simple-work related
26 decisions necessary to function in unskilled work. AR 27. While other interpretations of the

medical evidence are possible, it cannot be said the conclusions reached by the ALJ in his RFC analysis are not supported by substantial evidence in the record. As a result, these findings must be affirmed. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

  C. <u>The ALJ's Finding That Plaintiff Could Perform His Past Relevant Work Was Not Supported by Substantial Evidence</u>.

  At step four of the sequential disability analysis, the ALJ found plaintiff's RFC included the "mental ability to understand, remember and carry out *simple* instructions and make *simple* work-related decisions necessary to function in unskilled work," and then concluded that plaintiff's past relevant work was not precluded by this RFC. AR 28 (emphasis added). At the hearing, VE Michael Swanson testified that plaintiff's past relevant work consisted of "dishwasher or kitchen helper" and "commercial cleaner." AR 491-92. He offered the Dictionary of Occupational Titles ("DOT") numbers for these positions, and testified that these jobs had a reasoning skill level of two. AR 492.

  Plaintiff argues that the ALJ's RFC finding precluded him from performing his past relevant work. The DOT indicates that jobs with a reasoning skill level of two require the worker to use "commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."[4] Dictionary of Occupational Titles, Appendix C (4th Ed. 1991). Dkt. No. 13 at 10 and Exs. A, B. Relying upon *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995), he argues that the ALJ erred by failing to explain the discrepancy between his conclusion that plaintiff could perform his past relevant work and the VE's testimony. *Johnson* held that an ALJ may accept VE testimony, even if it conflicts with classifications in the DOT, provided the "record contains persuasive evidence to support the deviation." 60 F.3d 1428, 1435 (9th Cir. 1995); *see also* SSR 00-4p. Unlike *Johnson*, this case does not

---

[4] This category is in contrast to reasoning level one, which requires workers to use "commonsense understanding to carry out *simple*, one or two step instructions." Dictionary of Occupational Titles, Appendix C (4th Ed. 1991) (emphasis added).

01 present a conflict between the VE's testimony and the DOT. The ALJ's decision states that
02 "the [VE] testified that, considering the claimant's [RFC] . . . the claimant had the ability to
03 return to his past relevant jobs[.]" AR 28. However, the VE offered no direct testimony
04 regarding plaintiff's ability to return to his past work. AR 491-93. He was not asked this
05 specific question by either the ALJ or by the claimant's attorney. *Id.* Hence, the ALJ did not
06 err by failing to explain a discrepancy between the VE and DOT because there was none.

07 The real issue is whether the ALJ's RFC relating to "simple" work tasks *ipso facto*
08 precluded plaintiff from performing his past relevant work. The claimant bears the burden of
09 proving that he is disabled, including the burden at step four of showing he is unable to
10 perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(e); 416.920(e). *Meanal*, 172
11 F.3d at 1113. In support of his finding that the plaintiff could perform his past relevant work,
12 the ALJ noted that he was able to successfully engage in his past relevant work until he was
13 incarcerated. AR 22. Moreover, plaintiff's past relevant work was "unskilled," which the
14 Regulations define as "work which needs little or no judgment to do simple duties[.]" 20
15 C.F.R. §§ 404.1568(a); 414.968(a). This description of plaintiff's past work is consistent with
16 the ALJ's RFC. As Drs. Petersen and Townes noted, once shown how to perform a task, the
17 plaintiff was able to complete the task effectively. AR 273, 291.

18 This case is analogous to *Flaherty v. Halter,* 182 F. Supp. 2d 824, 849-51 (D. Minn.
19 2001). In *Flaherty*, the claimant sought review of a non-disability determination because the
20 ALJ cited availability of jobs requiring a reasoning level of two, just as was the case here. The
21 ALJ's RFC analysis indicated the claimant could perform work that involved simple, routine,
22 repetitive, concrete, and tangible tasks. The claimant argued that this RFC finding conflicted
23 with the DOT reasoning level of two. The court, however, concluded that although the DOT
24 level two reasoning required an understanding to carry out detailed instructions, it also
25 advised that the instructions would be uninvolved — that is, they would not involve a high
26 level of reasoning. As a result, the RFC limitations of simple, routine, repetitive, concrete, and

01 tangible tasks did not conflict with jobs that included a DOT level two reasoning requirement.
02 Similarly, in this case, the ALJ found that the plaintiff's RFC limitations were that he retained
03 the mental ability to understand, remember, and carry out simple instructions, and make simple
04 work-related decisions necessary to function in unskilled work  This would not preclude the
05 plaintiff from performing his past relevant work as a dishwasher, kitchen helper, or
06 commercial cleaner, jobs which he performed until his incarceration.

07 The ALJ's statement that the VE testimony supported his conclusion was in error
08 because neither the ALJ nor the claimant, who bore the burden of proof on this matter, asked
09 the specific question of the VE.  Nevertheless, his overall conclusion that the claimant retained
10 the ability to perform his past relevant work is supported by substantial evidence in the record.

## VIII.  CONCLUSION

12  For the reasons stated above, I recommend that the Court affirm the decision of the
13 Commissioner and dismiss the plaintiff's complaint.  A proposed order accompanies this
14 Report and Recommendation.

15 DATED this 20th day of July, 2006.

*James P. Donohue*
———————————————
JAMES P. DONOHUE
United States Magistrate Judge